AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States Courts
Southern District of Texas
FILED
JUL 20 2017
David J. Bradley, Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Great Value Storage, Units 41, 326, 327, 618
6250 Westward St.
Houston, TX 77081

Case No. H17-1214

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to Affidavit

located in the ___Southern___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to Affidavit

TRUE COPY I CERTIFY ATTEST:
DAVID J. BRADLEY, Clerk of Court
By Kathleen Murphy
    Deputy Clerk

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

United States Courts
Southern District of Texas
FILED
NOV 27 2017
David J. Bradley, Clerk of Court

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. Section 7201 | Willfully filing false tax return |
| 18 U.S.C. Section 1341 | Wire Fraud |
| 18 U.S.C. Section 371 | Conspiracy |

The application is based on these facts:

See attached Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert D. Simpson*
Applicant's signature

Robert Simpson, Special Agent IRS-CI
Printed name and title

Sworn to before me and signed in my presence.

Date: 07/20/2017

City and state: Houston, Texas

Judge's signature

Nancy Johnson, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Robert Simpson, being duly sworn, depose and state the following:

1. I am a Special Agent with the Internal Revenue Service – Criminal Investigation (IRS-CI), United States Department of the Treasury, and, as such, I am empowered to make arrests and to obtain and execute search, seizure, and arrest warrants. I am currently assigned to the Houston Field Office of the IRS-CI, and have been so since 1993. I have participated in numerous investigations involving felony violations of Title 26 of the United States Code (tax violations) and related financial crimes, including money laundering, bank fraud, wire fraud, mail fraud, illegal gambling operations, and identity theft. I have also been involved in several investigations involving personal injury attorneys and conspiracies to illegally acquire and inflate personal injury settlements related to automobile accidents.

2. I am making this affidavit in support of an Application for Search Warrant for the following premises:

    a. Great Value Storage, 6250 Westward Street, Houston, Texas 77081, Unit #41

    b. Great Value Storage, 6250 Westward Street, Houston, Texas 77081, Unit #326

    c. Great Value Storage, 6250 Westward Street, Houston, Texas 77081, Unit #327

    d. Great Value Storage, 6250 Westward Street, Houston, Texas 77081, Unit #618.

3. I base the information outlined in this affidavit on personal observations and knowledge, information related to me by other sworn agents and law enforcement officers, and my training and experience in the investigation of financial crimes. The facts set forth in this affidavit are not the only facts known to your affiant, they are only the facts set forth for the limited purpose of establishing probable cause that evidence of federal crimes, namely tax evasion in violation of Title 26, United States Code, Section 7201; the willful subscription to and filing of false tax returns in violation of Title 26 United States Code, Section 7206(1); mail fraud, in violation of Title 18, United States Code, Section 1341; and conspiracy in violation of Title 18, United States Code, Section 371 exists at the aforementioned premises.

## Background of Investigation

4. IRS-CI received information from the Harris County District Attorney's Office (HCDA) regarding potential criminal tax violations committed by Jeffrey Stern. Stern is a Houston area personal injury attorney. The HCDA had previously indicted Stern for solicitation of capital murder in an alleged conspiracy with Stern's mistress, Michelle Gaiser, to have Stern's wife, Yvonne, murdered. Three attempts were made on Yvonne Stern's life. While awaiting trial approximately two years after initially being charged in the case, Gaiser approached another inmate at the Harris County Jail about having Jeffrey Stern murdered. Jeffrey Stern had been released on a $500,000 bond shortly after his arrest in the case. The inmate approached by Gaiser, however, contacted Stern's attorneys with the information, who passed the information on to the HCDA. The charges against Stern were subsequently dismissed based on insufficient corroboration of accomplice testimony. Gaiser pleaded guilty to the original charges against her.

5. During the course of the investigation, HCDA investigators obtained bank records for Stern's law firm. They noted that a substantial number of checks from Stern to                                     were cashed at a local check-cashing establishment. When contacted by the HCDA,                   denied any knowledge of the checks written to them by Stern, as well as receipt of any funds from Stern, including cash. Contact with the owner of the check-cashing establishment revealed that the checks from Stern to                                     were being cashed by a third party. Suspecting potential tax violations, the HCDA referred the information to IRS-CI.

6. As outlined below, the evidence indicates that from at least 2009 through 2014 Stern operated a fraud scheme in which he illegally solicited personal injury cases by paying non-attorneys for client referrals. Stern disguised the illegal payments to non-attorneys as valid payments to referring attorneys and improperly deducted those expenses as legitimate business expenses on his tax returns. These improper deductions resulted in substantial tax loss to the Internal Revenue Service.

7. In this scheme, Stern issued checks from his law firm bank account made payable to various attorneys. The Government obtained copies of these checks from the HCDA and by grand jury subpoena to Frost Bank for Stern's law firm bank accounts. The checks were characterized as referral fees in the law firm's books and records, as well as on the firm's tax returns, where they were deducted as business expenses. The checks, however, were not, in fact, received by the attorneys to whom they were made payable. Rather, the checks were diverted to one of several local check cashers or directly to other co-conspirators. It is believed the funds from the checks were used to pay other individuals for the solicitation of personal injury cases, including case "runners" or "brokers," as well as clinic owners. The evidence suggests that

2

the medical billings associated with those cases included exaggerated and fraudulent billing submissions, thereby creating larger settlements in the personal injury litigation. The Stern law firm received the majority of its checks in settlement of personal injury lawsuits via U.S. mail. Additionally, review of insurance files related to the investigation reveals that much of the official correspondence exchanged between the Stern law firm and various defendant insurance companies is conducted via U.S. mail, including representation letters, settlement demands, and settlement offers.

8. Based upon training and experience, your affiant is aware that it is common practice in personal injury fraud schemes for law offices and medical clinics to have financial arrangements, including cash payments, for the referral of cases to one another. It is also common in these fraud schemes for attorneys to pay referral fees to "case brokers," also known as "marketers" or "runners," who solicit potential plaintiffs and refer them to an attorney's office. It is illegal in the state of Texas for attorneys to make referral payments to non-attorneys. *See* Texas Penal Code § 38.12; Texas Disciplinary Rule of Professional Conduct 7.03. As such, these expenses would not be deductible as business expenses per Title 26, United States Code, Section 162(c)(2). It is, however, legal in some circumstances for an attorney to pay a referral fee to another attorney, and such payments may be deductible. *See* Texas Disciplinary Rule of Professional Conduct 1.04(f). It is also common for chiropractic clinics and other medical providers involved in such fraud schemes to inflate or pad treatment records to increase the alleged medical costs associated with a claim, thereby driving up the settlement value of a case.

## IRS-CI Investigation

### I. Fraudulent Referral Fee Checks and

9. The evidence outlined below indicates that Stern is paying            illegal referral fees. These fees come from checks that Stern issues to attorneys who do not receive the checks. The checks, instead, are cashed at check cashing services, and the cash is paid to              . The evidence shows that         deposits these illegal referral fees in cash in structured deposits into his and his wife's bank accounts. The evidence further shows that         is affiliated with             , and that               fraudulently inflates the medical bills of patients referred by         and represented by Stern.

10.

3

11.

12.

13.

14.

15.

16.

17.

18.

**II.    Stern and**

19.

20.

21.

22.

23.

24.

III. <u>Stern and</u>

25.

26.

27.

28.

29.

30.

31.

32.

## IV. Evidence of False Income Tax Returns/Tax Evasion

33.

34. Ed Dipiero was interviewed by IRS-CI on December 20, 2016. Dipiero indicated that, as an employee of the Bernstein & Toy accounting firm, he is the person primarily responsible for preparing Jeffrey Stern's federal income tax returns, and has been since before 2009. Dipiero stated that Stern's law

      firm income was reported on Stern's personal income tax returns on a Schedule C, Sole Proprietorship. Dipiero prepares the law firm Schedule C based on documents provided by Stern's Controller, Robert Koenig. Documents received from Koenig include a year-end trial balance, balance sheet, and income statement (profit and loss statement). Dipiero stated that entries to the referral fees account would have the effect of reducing Stern's taxable income.

35. In 2010, one of the years Dipiero received financial statements from Koenig, he also received a detailed trial balance by account for the month of December 2010. The trial balance reflected all entries to the referral fee account for December of 2010.

36.

## V. Indications That Evidence of Tax Evasion and the Willful Filing of False Tax Returns Exists at the Premises to Be Searched

37.

38.

39. On May 9, 2017, your affiant received a call from an employee at Great Value Storage. The employee stated that a Hispanic female had been in unit #41 going through records. The female came into the on-site office and asked to use the restroom; the female identified herself as an employee of the Stern law firm.

40. Also on May 9, 2017, your affiant received another call from an employee at Great Value Storage and was informed that three vehicles had arrived near unit #41 and it appeared that several people were setting records on the ground outside the unit. Your affiant and several other IRS-CI Special Agents set up surveillance and observed four vehicles in the areas of units #41 and #618. Three of the vehicles had no known connection to Stern. A fourth vehicle, a Chevrolet Silverado, is registered to Fidel Jimenez. A Hispanic male was seen entering the Chevrolet Silverado with a stack of what appeared to be files or papers. Agents followed the Chevrolet Silverado to an office building at 4909 Bissonnet Street in Bellaire, Texas. The address 4909 Bissonnet is the location of the law firm of Jeffrey Stern. Agents did not observe the Hispanic male entering the building. Agents at the storage location did not observe anyone removing a large volume of records from the storage units or leaving with a large amount of records.

41. Based upon the foregoing, your affiant respectfully submits that probable cause exists to believe that Jeffrey Stern and others are causing false referral fee checks to be generated by the law firm of Jeffrey Stern and that those checks are being diverted to pay
, and others for illegal purposes, including paying client referral fees to non-attorneys. In calculating taxes owed, the funds from the checks, which are illegal payments, would not be deductible as legitimate referral fees or other business expenses. The evidence shows, however, that the checks were deducted as referral fee expenses on the tax returns of Jeffrey Stern. Your affiant further respectfully submits that there is probable cause to believe that evidence of crimes, namely the books and records of the law firm of Jeffrey Stern, is currently located at Great Value Storage, 6250 Westward Street, Houston, Texas 77081, in units #41, #326, #327, and #618. The documents at the storage site are evidence of tax evasion and willfully filing tax returns, in violation of Title 26, United States Code, Sections 7201 and 7206(1), as well

11

as evidence of mail fraud in violation of Title 18, United States Code, Section 1341 and conspiracy in violation of Title 18, United States Code, Section 371.

42. In order to ensure that privileged materials are not improperly viewed or seized, a privilege or "taint" team will be designated to conduct the search and to seize any relevant items. The privilege team will consist of IRS-CI agents and an Assistant United States Attorney that are not involved in the underlying investigation. Instructions will be given to the privilege team prior to the search, which set forth procedures designed to minimize the intrusion into privileged material. These instructions have been reviewed and approved by the Office of Enforcement Operations, United States Department of Justice and are attached hereto as Attachment C for the Court's review. These instructions include a specific list of the items to be seized. The privilege team will not disclose any information to the investigation/prosecution team until instructed to do so by the attorney assigned to the privilege team. As described in Attachment B, the items to be seized primarily include the financial and operating books and records of the law firm, as opposed to client records or files. Additionally, any items found at the search locations will have already been moved out of the law offices of Jeffrey Stern and relocated to the off-site storage facility. As such, disruption to the operation of the law firm should be minimal and the possibility of a violation of attorney-client privilege is minimized.

_____
Robert Simpson
Special Agent
Internal Revenue Service
Criminal Investigation

Sworn to and subscribed before me this __20__ day of July 2017 and I find probable cause.

_____
United States Magistrate Judge
Southern District of Texas

12